**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas Edward TARANOWSKI,
Defendant-Appellant.**

**No. 71–1777.**

United States Court of Appeals,
Seventh Circuit.

Argued May 30, 1972.

Decided Sept. 22, 1972.

Kenneth S. Jacobs, Villa Park, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., Michael L. Levinson, Asst. U. S. Atty., Danville, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and STEVENS and SPRECHER, Circuit Judges.

PER CURIAM.

Defendant appeals from his conviction, following a bench trial, of violating 50 App. U.S.C. § 462 by failing to report for civilian work. He raises several issues on appeal; we need consider only one: Did the failure of the local board to send defendant's mother notice of his I-O classification and of her appeal rights as required by the applicable regulation invalidate the subsequent order to report for civilian work? We conclude that it did and that defendant's conviction must therefore be reversed.

I.

We begin with a chronological statement of the facts. Defendant, a Jehovah's Witness, registered with his local board on September 26, 1968, and filed his first classification questionnaire on October 21, 1968. This questionnaire included information to indicate that he might be entitled to a IV-D ministerial classification or a III-A dependency classification. He completed an additional questionnaire on the support which he provided his widowed mother and 6-year-old sister. That document also contained a statement by his mother that she needed the support which he provided. On November 25, 1968, defendant was classified I-A. On November 26, the board mailed Form 110 notifying him of his classification and Form 217 advising him of his appeal rights. On the same day his mother was mailed Form 111 advising her of her son's classification, and of the rights which she, as a claimed dependent, had to appeal that classification.

On December 13, the board received a letter from defendant requesting "a personal appearance before the appeal board for the purpose of reclassification." Since he was not entitled to a personal appearance before the appeal board but was entitled to a personal appearance before the local board, the board treated the request as one seeking an appearance before the local board and scheduled such an appearance. By letter of December 9, defendant's mother sought "to appeal my son's I-A classification." On January 13, 1969, defendant appeared before the local board. On March 10, his mother appeared. Also on March 10, the board reclassified defendant I-A. On March 11, Forms 110 and 217 were mailed to defendant and Form 111 was mailed to his mother. On March 13, the board received a letter from defendant requesting a meeting with a government appeal agent and "a personal appearance before the local board for the purpose of appealing" his I-A classification. On March 14, the

board received a letter from Mrs. Taranowski seeking to "appeal my son's classification again."

An appointment was made for defendant to meet with a government appeal agent on April 16. On April 15, the board received a letter from Mrs. Taranowski supplying information about her expenses which she said she had forgotten when she earlier supplied similar information. Although defendant was apparently not entitled to another personal appearance before the local board, he was nevertheless given an opportunity to appear on April 28.[1] At that time he requested Form 150, the special form for conscientious objectors. On May 5, the board received a letter from defendant setting forth some of his religious views. On May 29, the board received the completed Form 150.

On June 9, defendant was reclassified I–O. On June 11, the board mailed Form 110 notifying him of his classification and Form 217 advising him of his appeal rights. Although the board was required to mail Form 111 to defendant's mother advising her of her son's classification and of her rights to appeal that classification, no such form was sent in this instance.[2] Defendant, though he had notice of his appeal

rights, did not appeal. He was subsequently ordered to report for civilian work. He failed to do so and was in due course indicted, tried, convicted, and sentenced to five years imprisonment.

## II.

We need not go into an extended discussion of the legal standard which we must apply. Both defendant and the government accept the proposition, well-settled in this circuit, that a procedural irregularity will not invalidate subsequent orders of a draft board unless there is a showing of prejudice. United States v. Manns, 232 F.2d 709, 711–712 (7th Cir. 1956); United States v. Isenring, 419 F.2d 975, 980 (7th Cir. 1969), cert. denied, 397 U.S. 1024, 90 S.Ct. 1260, 25 L.Ed.2d 533.[3]

## III.

Defendant argues that the local board committed prejudicial error in failing to forward his file to the appeal board following receipt of the various letters responding to the classification of November 25 and March 10. We need not decide the propriety of the board's actions in these instances because, even if we assume error, we find no prejudice.

1. The regulations require that a registrant be given such an opportunity to appear after his classification "except a classification which is determined upon an appearance before the local board." 32 C.F.R. § 1624.1(a). [This and all subsequent references are to the 1971 edition of C.F.R.]

2. It is undisputed that the regulations require that such notice be given, 32 C.F.R. §§ 1623.4(b), 1624.2(d), 1625.12, and that defendant's mother is entitled to appeal his classification, 32 C.F.R. §§ 1626.2(a) and (c), 1626.11(a). Furthermore, the mailing of Form 111 must be recorded on Form 100 in the registrant's file, 32 C.F.R. § 1623.4(e). The requisite notation was made when the form was sent on November 26, 1968, and March 11, 1969. No such indication appears following the I–O classification on

June 9, 1969. There was testimony that the form must have been sent because it customarily is sent. Such testimony, however, is insufficient to rebut the absence of the required notation and the testimony of Mrs. Taranowski that she did not receive the notice. Furthermore, the district court's opinion is based on the assumption that no notice was received and the government accepts this assumption in its argument on this appeal.

3. See also United States v. Primous, 420 F.2d 33, 34 (7th Cir. 1970), cert. denied, 397 U.S. 1053, 90 S.Ct. 1395, 25 L.Ed.2d 669; United States v. Fisher, 442 F.2d 109, 114–115 (7th Cir. 1971) (showing by defendant that he was deprived of opportunity to consult government appeal agent shifted burden to government to prove absence of prejudice beyond a reasonable doubt).

■ The reclassification on June 9, 1969, revived all rights of appeal.[4] Defendant was notified of his rights and had he exercised them he could have suffered no prejudice from any errors the board might have made prior to June 9. Likewise, had Mrs. Taranowski received notice of her appeal rights following the June 9 classification, neither she nor defendant would have been prejudiced by any pre-June 9 conduct by the board. Thus, the issue which we must resolve is whether the failure of the board to give Mrs. Taranowski notice of the June 9 classification *and* of her rights to appeal that classification resulted in the kind of prejudice which would invalidate the subsequent order to report for civilian work.

## IV.

■ The government argues that Mrs. Taranowski had actual notice of her right to appeal and that therefore neither she nor her son could have been prejudiced by the failure of the board to send her Form 111. The government is, of course, entitled to have the evidence construed in its favor. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Lehman, (7th Cir. Aug. 7, 1972, No. 71–1712), slip opinion p. 2. The evidence clearly supports a conclusion that Mrs. Taranowski knew of her son's classification and of his right to appeal.[5] But that is not the key issue. We must decide if there is any record support for the conclusion that she knew of *her* right to appeal.

The government relies on her testimony that *"we* just thought we had just exhausted *our* appeals." (Emphasis the government's.)[6] This language, the government argues, indicates that Mrs. Taranowski knew she had appeal rights but thought she had exhausted them. Since defendant was notified of his rights of appeal and since Mrs. Taranowski knew of his rights, it is argued—as the dis-

---

4. 32 C.F.R. § 1625.13. See also § 1624.2 (e).

5. The district court disagreed with defendant's contention that his mother had no notice of her right to appeal. However, his discussion of the evidence on that issue supports only a conclusion that she knew of her son's classification and of *his* right to appeal—not that she knew of *her* right to appeal. The district court wrote:

"First, MRS. TARANOWSKI testified that her son told her a day or two later of his I–O classification. And though under quite suggestive questioning by defense counsel, MRS. TARANOWSKI testified *inter alia* that her failure to request another appeal resulted from the failure to receive Form 111, she also testified that after discussing the matter of appeal with the defendant they both thought they exhausted their right to appeal. Yet, since the Selective Service file shows that TARANOWSKI was sent notification of the right to appeal his I–O classification, this contradicts MRS. TARANOWSKI's previous statement and frankly her credibility. Moreover, other factors indicating knowledge of a right to appeal by MRS. TARANOWSKI include: her close relationship as a widowed mother to TARANOWSKI, the fact that they lived in the same home at the same mailing address, and their extensive contact and involvement with the local board and the classification of her son, plus the fact that subsequent to the date of the I–O classification all correspondence with the local board to TARANOWSKI was stamped I–O."

6. The testimony in context was:
"Q. Did you file an appeal from the I–O classification Ma'am?
"A. No.
"Q. Would you tell us why not?
"A. Well, I just supposed that we couldn't appeal anymore.
"Q. Why did you arrive at that conclusion?
"A. Well, I don't know.
"Q. Why did you conclude that you couldn't appeal from the I–O classification?
"A. Well, we just thought that we had just exhausted our appeals.
"Q. Why was that? Did it have anything to do with not receiving the form?
"A. Yes, it did" (Tr. 47–48).
Objection was made and sustained as to the last question, so we shall disregard it.

trict court concluded—that Mrs. Taranowski's testimony lacks credibility.

 An appellate court will, of course, normally defer to the trial judge's assessment of the credibility of witnesses. He has seen and heard them and can take their demeanor into account. Here, however, the court relied not on such factors but only on a single statement of the witness. On the facts of this case, mere doubts about the credibility of this witness based upon one sentence of her testimony cannot justify a conclusion that she had actual knowledge of *her* appeal rights. The government cites no other evidence on this point and we have found none. Furthermore, the "we-our" sentence itself is not inconsistent with the proposition that Mrs. Taranowski did not know of *her* appeal rights.

After both the November and March classifications, both defendant and his mother wrote letters seeking to appeal the classification. They may have considered this procedure more likely to succeed than merely having the defendant himself appeal. In any event, when the I–O classification was received, defendant and his mother knew that he had a right to appeal but not that she had a right to appeal. Indeed, they might properly have assumed that she did not have such a right since, on both prior occasions when she had such right, she was so notified. Mrs. Taranowski, who certainly cannot be held to a preci-

sion of language which even lawyers rarely attain, might well have summarized the situation by concluding that "we" have exhausted "our" appeals even though defendant himself had not exhausted his appeal.

Defendant's reason for not appealing himself is immaterial to the issue before us. If the requisite prejudice resulted, the board's failure to send Form 111 to Mrs. Taranowski invalidated its subsequent order to report for civilian work. We turn then to the prejudice question.

### V.

 It can be argued that since defendant could have appealed and did not, he was not prejudiced by the failure of the board to notify his mother of her appeal rights. Such an argument, however, fails to pay proper heed to the policy of the statute and regulations. Congress provided for numerous deferments or exemptions.[7] Some of these, such as occupational or dependency deferments, obviously affect third parties. Thus, the regulations promulgated pursuant to the statutory authority and in furtherance of its purposes provide for the protection of the interests of these third persons. They are entitled to notice of the registrant's classification[8] and may appeal in their own right,[9] even though the registrant himself does not appeal.[10]

---

7. See 50 App.U.S.C. § 456; the dependency deferment is covered in § 456(h)(2).

8. 32 C.F.R. §§ 1623.4(b), 1624.2(d), 1625.12.

9. 32 C.F.R. §§ 1626.2(a), 1626.11(a).

10. 32 C.F.R. § 1626.11(d) provides merely that if someone other than the registrant appeals, the local board should notify the registrant that an appeal has been taken.

There is nothing terribly illogical about this. A local community's physician might be indifferent to whether he practiced in the community or in the army; the community, however, might be very much concerned. Likewise, a son may not particularly care whether he works

in a local factory or in the army; his mother might be very much concerned if she feels she needs his support.

In this case Mrs. Taranowski testified that the decision not to appeal was "mostly" her son's. (Tr. 52.) Had she known of her own right of appeal, she may not have deferred to her son's judgment on whether she should exercise it. Nor can we be sure what his advice might have been. Defendant might have declined to appeal himself because he felt that his chance of success would be much less than if his mother could also have appealed. Thus, had he known of his mother's right to appeal, he may have suggested that they both appeal.

■■ The registrant, naturally, gets the benefit of any appeal taken by a third party. It follows that if such a third party has no notice of his opportunity to appeal, the registrant is prejudiced even though he did not himself appeal because he is deprived of the benefit of having a third person appeal. Whether or not that appeal would have been taken or would have been successful is irrelevant; the prejudice results from the denial of the chance that it might have been taken or might have been successful. Thus, the fact that defendant did not appeal his own classification does not remove the prejudice resulting from the failure of the board to give his mother notice of her own appeal rights.

■ Furthermore, if the protection given third parties by the regulation is to have any significance, there must be some way to enforce the rights given. A dependent such as Mrs. Taranowski is prejudiced if she is deprived of her means of support without the full opportunity provided by law to contest that deprivation. Her rights can be protected only by invalidating any action taken in defiance of those rights. Since the registrant as well as the dependent receives the benefit of her exercise of those rights, we see no reason why the registrant should not have standing to assert the invalidity of any such action.

■ In summary, we find no record support for a conclusion that Mrs. Taranowski had actual notice of *her* appeal rights. In the absence of such actual notice, the board's failure to send Form 111 was prejudicial to both defendant and his mother. The subsequent order to report for civilian work is therefore invalid. A criminal conviction based upon such an invalid order cannot stand.

We therefore reverse the judgment and remand with instructions that the indictment be dismissed.

Reversed and remanded.